UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
LUIS LUCERO, JOAQUIN COLIN, and JOSE ARGUETA,
individually and on behalf of all others similarly situated,

                                         Civil Action No.
                    Plaintiffs,               1:21-cv-08675-LGS

-against-

SHAKER CONTRACTORS, CORP. and SHER GUL,

                    Defendants.
--------------------------------------------------------------------------------X

### PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

      Plaintiffs Luis Lucero, Joaquin Colin, and Jose Argueta (collectively, "Plaintiffs"), through their attorneys, Katz Melinger PLLC, submits the following proposed findings of fact and conclusions of law for their claims against defendants Shaker Contractors, Corp. ("Shaker Contractors") and Sher Gul (collectively, "Defendants"), pursuant to the Court's Individual Practices in Civil Cases.

### PROPOSED FINDINGS OF FACT

      1.      Defendant Shaker Contractors, Corp. is a domestic corporation with its principal place of business located at 245 Throgs Neck Boulevard, Bronx, New York 10465. Complaint ¶ 8.

      2.      At all relevant times, Defendant Sher Gul was a person in control of the operations of Shaker Contractors. Complaint ¶ 11.

      3.      At all relevant times, Defendants were responsible for setting Plaintiffs' schedules, supervising Plaintiffs' employment, and compensating Plaintiffs, and had the power to hire, fire, and discipline Plaintiffs. Complaint ¶¶ 12-15;  Declaration of Luis Lucero in  Support of Plaintiffs' Motion for a Default Judgment, Dkt. No. 17-1 ("Lucero Decl.") ¶ 5; Declaration of Joaquin Colin in  Support of Plaintiffs' Motion for a Default Judgment, Dkt. No. 17-2 ("Colin Decl.") ¶ 5;

Declaration of Jose Argueta in Support of Plaintiffs' Motion for a Default Judgment, Dkt. No. 17-3 ("Argueta Decl.") ¶ 5.

4.     Collectively, Defendants earned gross annual revenues in excess of $500,000.00 per year. Complaint ¶ 16; Lucero Decl. ¶ 6; Colin Decl. ¶ 6; Argueta Decl. ¶ 6.

5.     Plaintiffs worked for Defendants as construction workers. Complaint ¶ 25; Lucero Decl. ¶ 7; Colin Decl. ¶ 7; Argueta Decl. ¶ 7.

6.     As construction workers, Plaintiffs' primary job duties included assembling scaffolding, mixing cement, demolition, installing wood frames, installing roofs, laying bricks, and performing other general construction work at several different job sites. Complaint ¶ 26; Lucero Decl. ¶ 8; Colin Decl. ¶ 8; Argueta Decl. ¶ 8.

7.     Plaintiffs did not have the authority to hire, fire, or discipline employees, and did not make suggestions or recommendations as to the hiring, firing, or conditions of employment of Defendants' employees. Lucero Decl. ¶ 9; Colin Decl. ¶ 9; Argueta Decl. ¶ 9.

8.     Lucero worked for Defendants from in or around 2003 until on or around June 3, 2019. Complaint ¶ 27; Lucero Decl. ¶ 7.

9.     Throughout his employment, Lucero typically worked six (6) days per week, from 8:00 a.m. to 5:00 p.m. each day, with a daily one (1) hour lunch break, for a total of approximately forty-eight (48) hours per week. However, approximately two (2) to three (3) days per week, Lucero was only permitted to take ten (10) to fifteen (15) minutes for his lunch break, bringing his total hours worked to approximately fifty (50) hours per week. Complaint ¶¶ 28-29; Lucero Decl. ¶¶ 10-11.

10.     Defendants paid Lucero at a fixed daily rate regardless of the number of hours he worked each week, which started at $55.00 per day in 2003 and increased incrementally until reaching $170.00 per day in or around January 2019. Complaint ¶¶ 30-32; Lucero Decl. ¶¶ 14-16.

11.     Defendants failed to timely pay Lucero his weekly wages on numerous occasions, and still owe Lucero $4,000.00 in wages that Lucero never received because the checks Defendants issued to Lucero for these wages bounced. Lucero Decl. ¶¶ 18-20.

12.     Colin worked for Defendants as a construction worker from in or around October 2015 until in or around October 2020. Complaint ¶ 33; Colin Decl. ¶ 7.

13.     From the start of his employment until in or around April 2017, Colin typically worked seven (7) days per week, from 8:00 a.m. to 5:00 p.m. each day, with a daily one (1) hour lunch break, for a total of approximately fifty-six (56) hours per week. However, approximately two (2) to three (3) days per week, Colin was only permitted to take ten (10) to fifteen (15) minutes for his lunch break, bringing his total hours worked to approximately fifty-eight (58) hours per week. Complaint ¶¶ 34-35; Colin Decl. ¶¶ 10-11.

14.     From in or around May 2017 until the end of his employment, Colin typically worked six (6) days per week for a total of approximately fifty (50) hours per week, but approximately one (1) week per month Colin worked seven (7) days for a total of fifty-eight (58) hours per week. . Complaint ¶¶ 36-37; Colin Decl. ¶¶ 12-13.

15.     Defendants paid Plaintiff Colin a fixed daily rate regardless of the number of hours he worked each week, which started at $200.00 per day in or around October 2015 and increased to $210.00 per day in or around April 2019. Complaint ¶¶ 38-40; Colin Decl. ¶¶ 16-18.

16.     Defendants failed to timely pay Plaintiff Colin his weekly wages on numerous occasions, and still owe Colin $5,900.00 in wages that Colin never received because the checks Defendants issued to Colin for these wages bounced. Colin Decl. ¶¶ 19-21.

17.     Argueta worked for Defendants from in or around September 2007 until in or around February 2020, and again from in or around March 2020 until on or around January 10, 2021. Complaint ¶ 41; Argueta Decl. ¶ 7.

18.     Throughout Argueta's employment with Defendants, Argueta typically worked seven (7) days per week, from 8:00 a.m. to 5:00 p.m. each day, with a daily one (1) hour lunch break, for a total of approximately fifty-six (56) hours per week. However, approximately two (2) to three (3) days per week, Argueta was only permitted to take ten (10) to fifteen (15) minutes for his lunch break, bringing his total hours worked to approximately fifty-eight (58) hours per week. Additionally, throughout his employment, Argueta was required to stay late four (4) days per week, until approximately 10:00 p.m., to guard freshly laid concrete until it dried, bringing his total weekly hours to approximately seventy-eight (78) per week. Complaint ¶¶ 42-44; Argueta Decl. ¶¶ 10-12.

19.     Defendants paid Argueta a fixed daily rate regardless of the number of hours he worked each week, which started at $70.00 per day in or around September 2007 and increased incrementally until reaching $170.00 per day in or around January 2019. Complaint ¶ 47; Argueta Decl. ¶¶ 15-17.

20.     Defendants also paid Argueta an additional $40.00 per week as compensation for the extra hours Argueta worked guarding drying concrete at night. Complaint ¶ 48; Argueta Decl. ¶ 18.

21.     Defendants failed to timely pay Plaintiff Argueta his weekly wages on numerous occasions, and still owe Argueta $4,300.00 in wages that Argueta never received because the checks Defendants issued to Argueta for these wages bounced. Argueta Decl. ¶¶ 19-21.

4

22.     Argueta routinely worked shifts that spanned more than ten (10) hours per but did not receive spread of hours pay equal to one (1) additional hour of pay at the applicable minimum wage rate for each such day. Argueta Decl. ¶¶ 25-26.

23.     Defendants did not track or record the hours that Plaintiffs worked during their employment with Defendants. Lucero Decl. ¶ 13; Colin Decl. ¶ 15; Argueta Decl. ¶ 14.

24.     Defendants did not provide Plaintiffs, at the time of their respective hires or at any time thereafter, a notice containing, among other things, their rates of pay, designated pay day, and the name, address, and telephone number for Shaker Contractors. Complaint ¶ 53; Lucero Decl. ¶ 24; Colin Decl. ¶ 25; and Argueta Decl. ¶ 27.

25.     Defendants also failed to provide Plaintiffs, with each wage payment, statements listing, among other things, Plaintiffs' regular and overtime rates of pay, the number of regular and overtime hours Plaintiffs worked, Plaintiffs' gross wages, and any deductions from Plaintiffs' wages. Complaint ¶ 54; Lucero Decl. ¶ 25; Colin Decl. ¶ 26; and Argueta Decl. ¶ 28.

## PROPOSED CONCLUSIONS OF LAW

### As to Jurisdiction and Venue

26.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that this is an action arising under the FLSA.

27.     This Court has supplemental jurisdiction over the claims arising under New York state law pursuant to 28 U.S.C. § 1367 in that the New York state law claims are so closely related to Plaintiff's federal claims as to form the same case or controversy under Article III of the United States Constitution.

28.     Venue is proper in this judicial district under 28 U.S.C. § 1391 as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct business through their employees, including Plaintiffs, within this judicial district.

### As to the First Cause of Action

**Elements of Claims for Unpaid Overtime Wages Under the FLSA**

29.     At all relevant times, Plaintiffs were employees within the meaning of 29 U.S.C. § 203.

30.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of 29 U.S.C. § 203.

31.     Under the FLSA, an employer is obligated to maintain records of the hours worked by its employees, pursuant to 29 U.S.C. § 211(c).

32.     Under the FLSA, if an employer fails to maintain records of the number of hours worked by its employees, an employee may meet their burden of establishing the number of hours worked through estimates based on the employee's recollection. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011).

33.     Under the FLSA, an employer who has not maintained records of the number of hours worked by its employees may rebut the presumption that an employee's estimates as to the number of hours they worked is accurate by providing evidence of the precise amount of work performed by the employee. *Anderson v. Mt. Clemens Pottery Co.*, 348 U.S. 680, 688 (1946); *Harold Levinson Assocs. v. Chao*, 37 Fed. Appx. 19, 20-21 (2d Cir. 2002).

34.     Plaintiffs met their burden of establishing the number of hours they worked each week during their employments with Defendants based on their recollections of their work hours.

35.     By defaulting, Defendants failed to adequately rebut Plaintiffs' estimates as to the number of hours they worked during their employments with Defendants with evidence of the precise amounts of work Plaintiffs performed.

36.     Pursuant to 29 U.S.C. § 207, a non-exempt employee is entitled to be paid overtime wages of not less than one and one-half (1.5) times the employee's regular hourly rate of pay or the minimum wage, whichever is greater, for all hours worked in excess of forty (40) per week.

37.     Plaintiffs were non-exempt employees under the FLSA and were entitled to be paid overtime wages of not less than one and one-half (1.5) times their regular hourly rates of pay or the minimum wage, whichever is greater, for all hours Plaintiffs worked in excess of forty (40) per week during their employments with Defendants.

38.     Defendants failed to pay Plaintiffs overtime wages of not less than one and one-half (1.5) times their regular hourly rates of pay or the minimum wage, whichever is greater, for all hours Plaintiffs worked in excess of forty (40) per week during their employments with Defendants, in violation of 29 U.S.C. § 207.

39.     If an employer is found to have violated the FLSA, the court may deny liquidated damages of 100% of the unpaid wages due only if the employer shows that its violation of the FLSA was made in good faith and that it had reasonable grounds for believing it was not in violation, pursuant to 29 U.S.C. § 260.

40.     Defendants have not demonstrated that their violations of the FLSA were made in good faith and that Defendants had reasonable grounds for believing that they were not in violation of the FLSA.

41.     Defendants' violations of the FLSA were willful.

42.     Defendants are joint employers who jointly managed, supervised, hired, fired, and controlled Plaintiffs' compensation, and are jointly and severally liable in this matter.

## As to the Second and Third Causes of Action

**Elements of Claims for Unpaid Minimum and Overtime Wages Under the NYLL**

43.     At all relevant times, Plaintiffs were employees within the meaning of NYLL § 190.

44.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of NYLL § 190.

45.     Under the NYLL, an employer is obligated to maintain records of the hours worked by its employees, pursuant to NYLL § 195.

46.     Under the NYLL, if an employer fails to maintain records of the number of hours worked by its employees, an employee may meet his burden of establishing the number of hours he worked through estimates based on the employee's recollection. *Jiao v. Shi Ya Chen*, 2007 WL 4944767, at *2-3 (S.D.N.Y. Mar. 30, 2007).

47.     Under the NYLL, an employer who has not maintained records of the number of hours worked by one of its employees bears the burden of proving that the employee was paid the correct wages for all work performed. *Yang v. ACBL Corp.*, 427 F.Supp.2d 327, 335-36 (S.D.N.Y. 2005).

48.     Plaintiffs met their burdens of establishing the number of hours they worked each week during their employments with Defendants based on their recollections of their work hours.

49.     Defendants failed to prove that Plaintiffs were paid the correct wages for all work performed during their employments with Defendants.

50.     Pursuant to NYLL §§ 190 *et seq.* and 650 *et seq.* and 12 NYCRR § 142-2.1, a non-exempt employee is entitled to be paid at least the applicable minimum wage rate for all hours worked.

51.   Plaintiffs were non-exempt employees under the NYLL and were entitled to be paid at least the applicable minimum wage rate for all hours worked during their employment with Defendants.

52.   Defendants failed to pay Plaintiffs at least the applicable minimum wage rate for all hours Plaintiffs worked during their employments with Defendants, in violation of NYLL §§ 190 *et seq.* and 650 *et seq.* and 12 NYCRR § 142-2.1.

53.   Pursuant to NYLL § 650 *et seq.* and 12 NYCRR § 142-2.2, a non-exempt employee is entitled to be paid overtime wages of not less than one and one-half (1.5) times the employee's regular hourly rate of pay or the minimum wage, whichever is greater, for all hours worked in excess of forty (40) per week.

54.   Plaintiffs were non-exempt employees under the NYLL and were entitled to be paid overtime wages of not less than one and one-half (1.5) times their regular hourly rates of pay or the minimum wage, whichever is greater, for all hours Plaintiffs worked in excess of forty (40) per week during their employments with Defendants.

55.   Defendants failed to pay Plaintiffs overtime wages of not less than one and one-half (1.5) times their regular hourly rates of pay or the minimum wage, whichever is greater, for all hours Plaintiffs worked in excess of forty (40) per week during their employment with Defendants, in violation of NYLL § 650 *et seq.* and 12 NYCRR § 142-2.2.

56.   If an employer is found to have violated the NYLL, the employee is entitled  to liquidated damages equal to 100% of the employee's unpaid wages, unless the employer proves that it had a good faith basis to believe that the employer's underpayment of wages was in compliance with the law, pursuant to NYLL § 663(1).

57.     Defendants failed to prove that they had a good faith basis to believe that their underpayments of wages to Plaintiffs were in compliance with the law.

58.     Defendants' violations of the NYLL were willful.

59.     Defendants are joint employers who jointly managed, supervised, hired, fired, and controlled Plaintiffs' compensation, and are jointly and severally liable in this matter.

## As to the Fourth Cause of Action on Behalf of Plaintiff Argueta

### Elements of Claims for Unpaid Spread of Hours Wages Under the NYLL

60.     At all relevant times, Argueta was an employee within the meaning of NYLL § 190.

61.     At all relevant times, Defendants were Argueta's employers within the meaning of NYLL § 190.

62.     Pursuant to NYLL § 650 *et seq.* and 12 NYCRR § 142-2.4, in addition to the minimum hourly wage rate for each hour worked, an employee is entitled to receive an additional hour's pay at the basic minimum hourly wage rate for any day in which the employee's shift spans more than ten (10) hours.

63.     Spread of hours pay under 12 NYCRR § 142-2.4 is not available to employees who earn more than the minimum wage. *Zubair v. EnTech Eng'g P.C.*, 808 F. Supp. 2d 592, 601 (S.D.N.Y. 2011).

64.     Argueta did not earn more than the applicable New York State minimum wage rate during any week in which he worked for Defendants.

65.     Argueta worked fourteen (14) hour shifts approximately four (4) days per week for Defendants.

66.     Argueta was entitled to spread of hours pay each day that his shift spanned more than ten (10) hours.

67.     Defendants failed to pay Argueta spread of hours pay for any day in which Argueta worked a spread of hours that exceeded ten (10) hours, in violation of NYLL § 650 *et seq.* and 12 NYCRR § 142-2.4.

68.     Defendants' violations of the NYLL and NYCRR were willful.

69.     Defendants are joint employers who jointly managed, supervised, hired, fired, and controlled Argueta's compensation, and are jointly and severally liable in this matter.

### As to the Fifth and Sixth Causes of Action

**Elements of Claims for Failure to Provide Payroll Notices and
Wage Statements Under the NYLL**

70.     At all relevant times, Plaintiffs were employees within the meaning of NYLL § 190.

71.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of NYLL § 190.

72.     Pursuant to NYLL § 195(1), an employer is required to furnish to each employee a notice containing, *inter alia*, the employee's rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; the name, address, and telephone number of the employer; and any other information as the commissioner deems material and necessary.

73.     Pursuant to NYLL § 198(1-b), if an employer fails to provide an employee with a notice containing the information required by NYLL § 195(1), the employee is entitled to liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

74.     Defendants failed to provide Plaintiffs with notices containing the information required by NYLL § 195(1).

75.     Pursuant to NYLL § 195(3), an employer is required to furnish to each employee, with each wage payment, a statement listing, *inter alia*: the dates of work covered by each payment of wages; the name of the employee and name, address, and telephone number of the employer; the employee's regular and overtime rates of pay; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

76.     Pursuant to NYLL § 198(1-d), if an employer fails to provide an employee with the wage statements as required by NYLL § 195(3), the employee is entitled to liquidated damages in the amount of $250.00 per day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

77.     Defendants failed to provide Plaintiffs with wage statements as required by NYLL § 195(3).

78.     Defendants are joint employers who jointly managed, supervised, hired, fired, and controlled Plaintiffs' compensation, and are jointly and severally liable in this matter.

<u>As to the Seventh Cause of Action</u>

**Elements of Claims for Failure to Timely Pay Wages Under the NYLL**

79.     At all relevant times, Plaintiffs were employees within the meaning of NYLL § 190.

80.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of NYLL § 190.

81.     Pursuant to NYLL § 191(1)(a)(i), manual workers are entitled to be paid their earned wages weekly and not later than seven (7) calendar days after the end of the week in which the wages were earned.

82.     Pursuant to NYLL § 190(4) a "manual worker" is a mechanic, workingman or laborer.

83.     Under the NYLL, Plaintiffs are considered "manual workers" because they worked as construction laborers for Defendants.

84.     During the relevant time period, Defendants routinely failed to pay Plaintiffs all of their earned wages in accordance with the agreed-upon terms of employment.

85.     During the relevant time period, Defendants failed to timely pay Plaintiffs all their earned wages on a weekly basis and not later than seven (7) calendar days after the end of the week in which the wages were earned.

86.     Throughout the relevant time period, Defendants failed to pay Plaintiffs all wages earned by Plaintiffs, including minimum, overtime, and spread of hours wages earned.

87.     As a result of Defendants' violations of the law and failure to pay Plaintiffs in accordance with NYLL § 191(1)(a)(i), Plaintiffs have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs.

88.     Defendants are joint employers who jointly managed, supervised, hired, fired, and controlled Plaintiffs' compensation, and are jointly and severally liable in this matter.

## Costs, Interest, and Attorneys' Fees

89.     A plaintiff who prevails in claims for unpaid wages under the FLSA is entitled to recover from the defendants costs and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

90.     A plaintiff who prevails in claims for unpaid wages under the NYLL is entitled to recover from the defendants costs and reasonable attorneys' fees pursuant to NYLL § 198(1-a) and § 663(1).

91.     A plaintiff who prevails in claims for unpaid wages under the NYLL is entitled to recover from the defendants prejudgment interest at a rate of 9% per year, calculated from the

midpoint date of the plaintiff's employment, on all wages due pursuant to NYLL § 663(1), CPLR § 5001, and CPLR § 5004.

92.     The midpoint date of Lucero's employment with Defendants was on or around August 12, 2017.

93.     The midpoint date of Colin's employment with Defendants was on or around April 27, 2018.

94.     The midpoint date of Argueta's employment with Defendants was on or around June 1, 2018.

**Plaintiffs Attorneys' Fees**

95.     Katz Melinger PLLC (the "Firm") has represented Plaintiffs since the outset of this matter.

96.     Katz Melinger PLLC is a boutique firm with substantial experience representing plaintiffs in wage and hour matters.

97.     Kenneth Katz, the sole member of the Firm, graduated from Hofstra University School of Law in May 2003, *cum laude*, with an award recognizing his achievement in the field of employment law. Mr. Katz was admitted to the New York Bar in 2004 and has been working primarily in litigation since his graduation. After spending more than 5 years working for the New York City Administration for Children's Services and a small private law firm, Jan Ira Gellis, P.C., Mr. Katz formed his own law firm with a partner, called Kerr & Katz, LLP, in October 2010. In November 2012, Mr. Katz left Kerr & Katz, LLP and formed Katz Melinger PLLC. Mr. Katz's hourly rate is $500.00 and Mr. Katz spent 0.60 hours on this matter.

98.     Nicola Ciliotta was an associate at the Firm and earned his B.A from Vanderbilt University and his J.D. from Penn State Law School. Mr. Ciliotta joined the firm in October 2018

focused his practice on employment law for three (3) years while at the Firm. His hourly rate was $325.00. Mr. Ciliotta spent 5.40 hours on this matter.

99.    Adam Sackowitz is an associate at the Firm. Mr. Sackowitz earned his B.S. from Cornell University in 2009 and his J.D. from the University of California at Los Angeles School of Law in 2014. Mr. Sackowitz was admitted to the Bars of the states of California in 2014, New York in 2015, and New Jersey in 2016, and has focused his practice on employment law, commercial litigation, and judgment enforcement for nearly seven (7) years. Mr. Sackowitz's hourly rate is $375.00 Mr. Sackowitz has spent 22.30 hours on this matter.

100.    Eliseo Cabrera is an associate at the Firm. Mr. Cabrera earned his B.A from University of California, Berkeley and his J.D. from City University of New York School of Law. Mr. Cabrera has focused his practice on employment law since May 2019 and has been a member in good standing of the New York Bar since 2017. Mr. Cabrera's hourly rate is $325.00 and Mr. Cabrera has spent 39.60 hours on this matter.

101.    Plaintiffs' counsel's hourly rates are reasonable based on their experience and are in line with the rates charged by attorneys in this district. *See Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 437 (S.D.N.Y. 2014) ("Courts in this District have determined in recent cases that a fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases.") (internal quotation marks and citation omitted).

## Conclusions

102.    Judgment should be entered in favor of Plaintiff and against Defendants for violations of the FLSA and the NYLL as follows:

a.    for Lucero, unpaid overtime wages in the amount of $17,592.00, unpaid regular wages in the amount of $4,000.00, liquidated damages in the amount of $21,592.00,

and wage and payroll notice penalties in the amount of $10,000.00, for a total of $53,184.00, plus interest at a rate of $5.32 per day from August 12, 2017 until the date a judgment is entered, along with costs and reasonable attorneys' fees;

b. for Colin, unpaid overtime wages in the amount of $42,929.76, unpaid regular wages in the amount of $5,900.00, liquidated damages in the amount of $48,829.76, and wage and payroll notice penalties in the amount of $10,000.00, for a total of $107,659.52, plus interest at a rate of $12.04 per day from April 27, 2018 until the date a judgment is entered, along with costs and reasonable attorneys' fees; and

c. for Argueta, unpaid overtime wages in the amount of $76,394.62, unpaid regular wages in the amount of $4,300.00, unpaid spread of hours wages in the amount of $6,240.00, liquidated damages in the amount of $86,934.62, and wage and payroll notice penalties in the amount of $10,000.00, for a total of $183,869.23, plus interest at a rate of $21.52 per day from June 1, 2018 until the date a judgment is entered, along with costs and reasonable attorneys' fees.

Dated:  New York, New York
         March 15, 2022

/s/ *Adam Sackowitz*
Adam Sackowitz
Katz Melinger PLLC
370 Lexington Avenue, Suite 1512
New York, New York 10017
T: (212) 460-0047
F: (212) 428-6811
ajsackowitz@katzmelinger.com
*Attorneys for Plaintiffs*