**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
LUIS LUCERO, JOAQUIN COLIN, and
JOSE ARGUETA,
*individually and on behalf of all others*
*similarly situated*,

                              Plaintiffs,                        **REPORT &**
                                                                 **RECOMMENDATION**

               -against-                                         **21-CV-8675 (LGS) (JW)**

SHAKER CONTRACTORS, CORP. and
SHER GUL,

                              Defendants.
----------------------------------------------------------------X

**TO THE HONORABLE LORNA G. SCHOFIELD, U.S.D.J.:**

Before this court is a reference for a damages inquest as to defaulting defendants Shaker Contractors, Corp. ("Shaker Contractors") and Sher Gul (collectively, "Defendants"). For the following reasons, I recommend that Plaintiffs Luis Lucero, ("Plaintiff Lucero") Joaquin Colin ("Plaintiff Colin"), and Jose Argueta ("Plaintiff Argueta," collectively the "Plaintiffs") be awarded damages from Defendants under the New York Labor Law ("NYLL") for failure to pay overtime, and spread of hour wages, liquidated damages, statutory damages, pre-judgment interest, plus post-judgment interest, attorneys' fees and costs.

## BACKGROUND

### A. **Factual Background**

Given Defendants' default, Plaintiffs' factual allegations in the Complaint, dated October 22, 2021, (Dkt. No. 1) except those related to damages, are accepted as true and Plaintiffs are entitled to all reasonable inferences in their favor. *See* Finkel

v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir.1981)).  With respect to Plaintiffs' claims for damages, Plaintiffs have submitted their Proposed Findings of Fact and Conclusions of Law, dated March, 15, 2022 (Dkt. No. 29) ("Proposed Findings"), with supporting declarations and exhibits (Dkt. Nos. 30-31), which have been submitted in connection with this damages inquest.

Plaintiffs each worked as construction workers for Defendant, Shaker Contractors, Corp., with its principal place of business located at 245 Throgs Neck Boulevard, Bronx, New York, 10465.  Proposed Findings ¶¶ 1,5.  Shaker Contractors offers residential and commercial construction services throughout greater New York.  Compl. ¶ 9.  Plaintiffs primarily assembled scaffolding, installed roofs, laid bricks, undertook demolition, and completed other general construction work at various job sites while employed by Shaker.  Proposed Findings ¶ 6.  Individual Defendant, Sher Gul controlled the operations of Shaker Contractors and exercised significant control over employees, including the power to hire and terminate employees, set work schedules, maintain employment records, determine the rate of pay, compensate employees, and supervise the work performed.  Proposed Findings ¶ 2; Compl. ¶¶ 11-14.  As joint employers, Defendants "jointly managed, supervised, hired," terminated and exerted control over Plaintiffs.  Compl. ¶ 15.  Throughout the duration of their employment, Plaintiffs were classified as non-exempt employees. Compl. ¶ 49.  Plaintiffs worked for Defendants for various time periods from 2003 until 2021.  Compl. ¶ 25.

Plaintiffs claim that, although they "routinely" worked in excess of 40 hours per week, they did not receive overtime compensation. Compl. ¶ 50. Plaintiffs further allege that Defendants failed to provide Plaintiffs with "statutory payroll notices and wage statements" as required by the NYLL §§ 195(1), 195(3). Compl. ¶¶ 53-55. Plaintiffs also allege that Defendants failed to timely pay wages no "later than seven (7) calendar days after the end of the week in which wages were earned." Compl. ¶ 90.

In addition, Plaintiff Argueta alleges that Defendants did not compensate him with the applicable New York State minimum wage for all hours worked and spread-of-hours pay. Compl. ¶¶ 51-52.

B. **Procedural History**

Plaintiffs commenced this action by filing a Complaint on October 22, 2021 (Dkt. No. 1). Defendants were served with copies of the Summons and Complaint on November 4, 2021 (Dkt. Nos. 7 and 8). The Complaint asserts the following causes of action: (1) unpaid overtime wages under the Fair Labor Standards Act (FLSA); (2) unpaid minimum and overtime wages under the New York Labor Law (NYLL); (3) unpaid spread of hours wages under the NYLL; (4) failure to provide payroll notices and wage statements under the NYLL; (5) failure to timely pay wages under the NYLL.

The Honorable Lorna G. Schofield, U.S.D.J., ordered Defendants to respond to the Complaint by November 16, 2021 (ECF No. 8). Defendants failed to answer or respond. Plaintiffs requested that the Clerk of Court make an entry of default

3

judgment. (Dkt. Nos. 10-11.)  Certificates of default were issued to Defendants (Dkt. Nos. 13 and 14) and Judge Schofield issued an order requiring Plaintiffs to re-file for default judgment by January 19, 2022 (Dkt. No. 15).  On January 19, 2022, Plaintiffs filed a Motion for Default Judgment as to all Defendants (Dkt. No. 17).  Defendants failed to retain counsel or appear at the hearing (Dkt. No. 25); Judge Schofield entered a default judgment in favor of Plaintiffs dated February 7, 2022.  Id.

Judge Schofield referred this case to the Honorable Jennifer E. Willis, U.S.M.J. on February 10, 2022 (Dkt. No. 26).  Subsequently, Judge Willis ordered Plaintiffs to file proposed findings of fact and conclusions of law, and an inquest memorandum of law accompanied by supporting affidavits and exhibits to establish proof of damages by March 15, 2022 (Dkt. No. 27).  Plaintiffs served the papers on Defendants on February 17, 2022.  (Dkt. No. 28).  Plaintiffs complied with the order and on March 15, 2022, filed the Proposed Findings of Fact and Conclusions of Law (Dkt. No. 29), the Declaration of Adam Sackowitz (Dkt. No. 31) ("Sackowitz Decl."), and the Inquest Memorandum of Law (Dkt. No. 32) ("Inquest Mem.").

## DISCUSSION

### 1. Applicable Legal Standards

A party's default is a concession of all factual allegations of liability against the defaulting party, except those relating to damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  While there is no question that a default judgment establishes liability, a default is not an admission of conclusions of law or damages. Tackie v. Keff Enterprises LLC, No. 14-CV-2074

(JPO), 2014 WL 4626229, at *1 (S.D.N.Y. Sept. 16, 2014).  The court must assess whether the well-pleaded allegations in the complaint comprise a legitimate cause of action or establish a legal foundation for liability.  In re Indus. Diamonds Antitrust Litig., 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000).

Where a plaintiff has sufficiently pleaded a claim and is entitled to relief, courts conduct an inquiry to determine actual or statutory damages.  Pastrana v. Mr. Taco LLC, No. 18-CV-09374 (GBD) (SN), 2022 WL 16857111, at *2 (S.D.N.Y. Sept. 23, 2022), report and recommendation adopted, No. 18-CV-9374 (GBD) (SN), 2022 WL 16857107 (S.D.N.Y. Nov. 10, 2022).

To obtain entry of a default judgment, the plaintiff has the burden to present evidence sufficient to establish damages with reasonable certainty.  Tackie, 2014 WL 4626229 at *1; see Trehan v. Von Tarkanyi, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986); Greyhound Exhibitgroup, Inc., 973 F.2d at 159; see Tapia v. Blch 3rd Ave. LLC, No. 14-CV-8529 (AJN), 2016 WL 4581341, at *4 (S.D.N.Y. Sept. 1, 2016) (under the FLSA and the NYLL, "[p]laintiffs bear the burden of proof to establish all claims and damages by a preponderance of the evidence").

"Absent employer records," a plaintiff has a low evidentiary threshold to prove that employers did not properly compensate them for work that they performed. Hernandez Gomez v. 4 Runners, Inc., 769 F. App'x 1, 2 (2d Cir. 2019).  Adequate evidence to support "the amount and extent" of uncompensated work "as a matter of just and reasonable inference" can be satisfied with a plaintiff's estimates based on their own recollection.  Id.  When a defendant defaults, courts have presumed a

plaintiff's recollection and estimate of hours to be correct.  See Zhang v. Hiro Sushi at Ollies, Inc., No. 17-CV-7066 (JPC), 2022 WL 2668263, at *5 (S.D.N.Y. July 11, 2022); see e.g., Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011); Magnoni v. Smith & Laquercia, LLP, 661 F. Supp. 2d 412, 417–18 (S.D.N.Y. 2009). The plaintiff is entitled to all reasonable inferences from the evidence offered in their favor.  Finkel, 577 F.3d at 84.

In turn, employers must present evidence to negate the "reasonableness of the inference to be drawn from the employee's evidence" or proof of the exact number of hours worked.  Hernandez Gomez, 769 F. App'x at 2.  Should a defaulting defendant fail to submit evidence or bring forth inaccurate or incomplete records, courts apply a burden-shifting scheme to evaluate whether the plaintiff has established an adequate basis to calculate damages.  Almanzar v. 1342 St. Nicholas Ave. Rest. Corp., No. 14-CV-7850 (VEC) (DF), 2016 WL 8650464, at *5 (S.D.N.Y. Nov. 7, 2016), report and recommendation adopted, No. 14-CV-7850 (VEC) (DCF), 2017 WL 1194682 (S.D.N.Y. Mar. 30, 2017).  Where a defendant fails to respond to the complaint, courts have sound discretion and are ordinarily justified in granting a default judgment against the defaulting party.  SEC v. Anticevic, No. 05-CV-6991 (KMW), 2009 WL 4250508, at *2 (S.D.N.Y. Nov. 30, 2009) (citing Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir.1984)); see Fed. R. Civ.P. 55(b)(2); cf. Bermudez v. Reid, 733 F.2d 18, 21–22 (2d Cir. 1984) (holding that the Southern District of New York should not have granted a default judgment because habeas proceedings differed from ordinary civil cases and warranted a hearing to review the merits of the petitioner's claims).  A default

judgment "should be made only where there was willful default, more than mere negligence or carelessness." E. Freight Ways, Inc. v. E. Motor Freight, Inc., No. 02-CV-3138 (LTS) (AJP), 2003 WL 21355486, at *2 (S.D.N.Y. June 11, 2003).

Courts are not required to conduct a hearing "if there is a basis for the damages specified in the default judgment." Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 29 (E.D.N.Y. 2015); see also Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012). The Court may conduct an analysis of plaintiff's damages claim based solely on the plaintiff's submitted evidence and award damages "even though the result may only be approximate." Reich v. S. New England Telecommunications Corp., 121 F.3d 58, 67 (2d Cir. 1997). Rule 55(b)(2) of the Federal Rules of Civil Procedure permits "but does not require the district judge to conduct a hearing." Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 53 (2d Cir. 1993). District courts have sound discretion to determine whether it is "necessary and proper" to conduct hearings on damages. Id. at 54; Fed. R. Civ. P. 55. A court has discretion on the amount of evidence required to evaluate the proposed damages claim. See Tamarin, 13 F.3d at 54 (assessing "damages with the aid of a single affidavit only partially based on real numbers"); see also Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989) (relying on "detailed affidavits" and documented proof to determine damages).

The burden-shifting standards are similar under both the FLSA and the NYLL. Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 497 (S.D.N.Y.

2017), aff'd, 752 F. App'x 33 (2d Cir. 2018).  Under the NYLL, employers are subject to a "more stringent burden of proof" upon failure to maintain adequate records or statements of wages to employees, "the employer in violation" must prove the "complaining employee was paid wages, benefits, and wage supplements."  Id.; N.Y. Lab. Law § 196-a(a).

By failing to appear and respond to the Complaint, Defendants have conceded Plaintiffs' well-pleaded allegations of liability.  Tackie, 2014 WL 4626229 at *1.

## 2. **Determination of Damages**

### 1. Recovery under the NYLL

With the Defendants already held in default, the Court must now assess damages.

Plaintiffs assert overtime violations and liquidated damages under both the FLSA and the NYLL.  While Defendants are liable under both federal and state statutes for failure to pay Plaintiffs for overtime, the law in the Second Circuit clearly dictates that plaintiffs may not recover for the same injury twice under both the FLSA and the NYLL.  Hengjin Sun v. China 1221, Inc., No. 12-CV-7135 (RJS), 2016 WL 1587242, at *2 (S.D.N.Y. Apr. 19, 2016).  Instead of duplicate recovery, Plaintiffs may recover once "under the statute which provides the greatest amount of damages."  Jiao v. Shi Ya Chen, No. 03-CV-0165 (DF), 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007).  Both the FLSA and the NYLL require employers to compensate employees overtime wages at a rate one and one-half times the regular rate for hours worked in excess of forty hours in a work week.  29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146-1.4.

8

(effective Jan. 1, 2011).   Given that the NYLL mirrors the FLSA overtime requirements, we turn to the statute of limitations to determine which standard provides the greatest measure of relief.

2.   Impact of the Longer Statutory Period under the NYLL

The FLSA has a two-tiered statute of limitations period to distinguish between ordinary and willful violations.   McLaughlin v. Richland Shoe Co., 486 U.S. 128, 132 (1988).   "[F]or unpaid minimum wages, unpaid overtime compensation, or liquidated damages," the statute of limitations period for a FLSA action is two years.   29 U.S.C. § 255.   When an employer's violations were willful and consisted of conduct that they knew or showed reckless disregard as to whether the actions would be prohibited by the FLSA, the statute of limitations period is three years.   Zhang, 2022 WL 2668263, at *7; McLaughlin, 486 U.S. at 133.

The applicable statute of limitations period under the NYLL is six years.   N.Y. Lab. Law § 663.   In addition to providing a longer recovery period for plaintiffs' damages, the NYLL "sets a minimum wage that is the same or greater than that provided by the FLSA."   Angamarca v. Pita Grill 7 Inc., No. 11-CV-7777 (JGK) (JLC), 2012 WL 3578781, at *4 (S.D.N.Y. Aug. 2, 2012).   Plaintiffs' damages under the NYLL will subsume their recovery under the FLSA because of the longer statute of limitations period covered by the NYLL.   Accordingly, although the Defendants are liable under both statutes, the court should apply the NYLL period to award the highest amount of damages.

3.  <u>Unpaid Overtime Wage Claims</u>

Like the FLSA, the NYLL sets the overtime hourly pay at one and one-half times the employee's regular hourly "rate for hours worked in excess of 40 hours in one workweek." 12 N.Y.C.R.R § 142-2.2.  An employee's appropriate overtime pay is "calculated by multiplying his regular hourly rate by one and one-half." Xochimitl v. Pita Grill of Hell's Kitchen, Inc., No. 14-CV-10234 (JGK) (JLC), 2016 WL 4704917, at *7 (S.D.N.Y. Sept. 8, 2016), report and recommendation adopted sub nom., No. 14-CV-10234 (JGK), 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016).  Under the NYLL, the overtime hourly pay shall be one and one-half times the employee's regular hourly "rate for hours worked in excess of 40 hours in one workweek." 12 N.Y.C.R.R. § 146-1.4.  Then multiply that rate "by the number of hours in excess of forty hours the employee worked each week." Id.  The resulting amount represents the uncompensated overtime wages that the employee should be awarded. Rosendo v. Everbrighten Inc., No. 13-CV-7256 (JGK) (FM), 2015 WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015), report and recommendation adopted, No. 13-CV-7256 (JGK), 2015 WL 4557147 (S.D.N.Y. July 28, 2015).

Plaintiffs' counsel offers breakdowns for each of the three Plaintiffs with information regarding the employment period, the daily salary, calculated regular and overtime rates, regular and overtime hours worked per week, and estimated damages calculations. See Sackowitz Decl. Ex. A at 2.  To compute each Plaintiff's overtime pay, the Court first determines each Plaintiff's regular hourly rate.  To do so, each Plaintiff's daily salary is multiplied by the number of days they worked each

10

week.  That amount is then divided by the number of hours each Plaintiff worked on a weekly basis.  Inquest Mem. at 12.  The regular hourly wage is multiplied by 1.5 to calculate each Plaintiff's lawful overtime wage.  The lawful overtime wage is then multiplied by the overtime hours worked per week, to compute each Plaintiff's weekly underpayment.  This total amount is then multiplied by the weeks in each pay period to calculate each Plaintiff's unpaid overtime damages.

Plaintiff Lucero alleges that throughout his employment with Defendants, he worked approximately 50 hours per week, 6 days a week.  Compl. ¶¶ 28-29.  Plaintiff Lucero also alleges that he received a fixed daily rate of $55.00 at the start of his employment in 2003, which increased by $5.00 to $10.00 per day until his daily rate reached $170.000 in or around January 2019.  Compl. ¶¶ 30-32.  The overtime pay for the relevant time periods for Plaintiff Lucero was $25.20 in 2015; $26.55 in 2016; $27.90 in 2017; $29.25 in 2018; and $30.60 in 2019.[1]

| Plaintiff Luis Lucero | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Pay Period | Weeks in Pay Period | Hours Per Week | Daily Salary | Hourly Wage | Lawful Overtime Wage | OT Hours Worked Per Week | Weekly Pay | Lawful weekly Pay | Underpayment per Week |
| 10/22/2015-12/31/2015 | 10 | 50 | $140.00 | $16.80 | $25.20 | 10 | $840.00 | $1,092.00 | $252.00 |
| 01/01/2016- | 52 | 50 | $147.50 | $17.70 | $26.55 | 10 | $885.00 | $1,150.50 | $265.50 |

---

[1] As illustrated in the charts below, the Court calculated each Plaintiff's damages with information for their daily salaries and the number of weeks that each Plaintiff worked in the various pay periods from the Sackowitz Decl. Ex. A.  Sackowitz Decl. Ex. A at 2-4.  The Inquest Mem. provided the Court with each Plaintiffs' regular hourly rate of pay and the total number of hours that Plaintiff Lucero worked.  See Inquest Mem. at 11-12.

| 12/31/2016 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 01/01/2017-12/31/2017 | 52 | 50 | $155.00 | $18.60 | $27.90 | 10 | $930.00 | $1,209.00 | $279.00 |
| 01/01/2018-12/31/2018 | 52 | 50 | $162.50 | $19.50 | $29.25 | 10 | $975.00 | $1,267.50 | $292.50 |
| 01/01/2019-06/03/2019 | 22 | 50 | $170.00 | $20.40 | $30.60 | 10 | $1,020.00 | $1,326.00 | $306.00 |

Thus, Plaintiff Lucero is entitled to damages as follows: $2,520.00 for weeks worked in 2015; $13,806.00 for weeks worked in 2016; $14,508.00 for weeks worked in 2017; $15,210.00 for weeks worked in 2018; and $6,732.00 for weeks worked in 2019.  In total, Plaintiff Lucero's damages for unpaid overtime wages come to $52,776.00.

Plaintiff Colin alleges that from October 2015 until April 2017, he typically worked for a total of 58 hours per week, seven days a week.  Compl. ¶¶ 33-35.  Around May 2017, Plaintiff Colin's schedule changed to 50 hours per week, six days a week.  Compl. ¶ 36; Inquest Mem. at 13.  For the rest of his employment, Plaintiff Colin worked 50 hours per week, six days a week but one week per month, he "worked seven (7) days for a total of fifty-eight 58 hours per week."  Id. at 2.  Plaintiff Colin also received a fixed daily rate regardless of the number of hours he worked per week.  Compl. ¶ 38.  In addition, he alleges that from October 2015 until March 2019, he received $200.00 daily, which later increased to $210.00 per day around April 2019.

Compl. ¶¶ 39-40.  As such, Plaintiff Colin's damages for unpaid overtime are calculated as below:

| Plaintiff Joaquin Colin[2] | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Pay Period | Weeks in Pay Period | Hours Per Week | Daily Salary | Hourly Wage | Lawful Overtime Wage | OT Hours Worked Per Week | Weekly Pay | Lawful weekly Pay | Underpayment per Week |
| 10/22/2015-12/31/2015 | 10 | 58 | $200.00 | $24.14 | $36.21 | 18 | $1,400.00 | $2,051.78 | $651.78 |
| 01/01/2016-12/31/2016 | 52 | 58 | $200.00 | $24.14 | $36.21 | 18 | $1,400.00 | $2,051.78 | $651.78 |
| 01/01/2017-04/30/2017 | 17 | 58 | $200.00 | $24.14 | $36.21 | 18 | $1,400.00 | $2,051.78 | $651.78 |
| 05/01/2017-12/31/2017 | 35 | 52 | $200.00 | $23.08 | $34.62 | 12 | $1,200.00 | $1,615.44 | $415.44 |
| 01/01/2018-12/31/2018 | 52 | 52 | $200.00 | $23.08 | $34.62 | 12 | $1,200.00 | $1,615.44 | $415.44 |
| 01/01/2019-03/31/2019 | 13 | 52 | $200.00 | $23.08 | $34.62 | 12 | $1,200.00 | $1,615.44 | $415.44 |
| 04/01/2019-12/31/2019 | 39 | 52 | $210.00 | $24.23 | $36.35 | 12 | $1,260.00 | $1,615.44 | $436.14 |
| 01/01/2020-10/31/2020 | 43 | 52 | $210.00 | $24.23 | $36.35 | 12 | $1,260.00 | $1,615.44 | $436.14 |

[2] The Court calculated the 52 hours per week from 05/01/2017 to 10/31/2020 based on an average of 50 hours per week with  one 58-hour week each month, from May 2017 until the end of Plaintiff Colin's employment.  Inquest Mem. at 2.

Based on the calculations in the chart above, the overtime pay for Plaintiff Colin for the relevant periods was $36.21 for October 2015 to April 2017, $34.62 for May 2017 to March 2019, and $36.35 for April 2019 to October 2020. See Inquest Mem. at 13. Plaintiff Colin is therefore entitled to damages as follows: $6,517.80 for weeks worked 2015; $33,892.56 for weeks worked in 2016; $11,080.26 for January to April 2017; $14,540.40 from May to December 2017; $21,602.88 for weeks worked in 2018; $5,400.72 for weeks worked from January to March 2019; $17,009.46 for weeks worked from April to December 2019; and $18,754.02 for weeks worked from January to October 2020. Plaintiff Colin's damages for unpaid overtime wages amount to $128,798.10.

Plaintiff Argueta alleges that while employed by Defendants, he regularly worked seven days per week for a total of 58 hours per week. Compl. ¶¶ 42-43. In addition, four days a week, Plaintiff Argueta stayed late to "guard the freshly laid concrete until it dried," therefore bringing his total hours worked to 78 hours per week. Compl. ¶ 44. For the excess hours Plaintiff Argueta worked to guard concrete, he received a fixed additional weekly payment of $40.00 as compensation. Compl. ¶ 48. As with the other Plaintiffs, Plaintiff Argueta also received a fixed daily rate regardless the hours he worked each week. Compl. ¶ 45. Plaintiff Argueta's rate of pay increased by $5.00 to $10.00 a day until it reached $170.00 per day by January 2019. Compl. ¶ 47. As shown in the chart below, Plaintiff Argueta's overtime pay for the relevant periods was $19.62 in 2015, $20.63 in 2016, $21.63 in 2017, $22.65 in 2018, and $23.65 from January 2019 to January 2021. See Inquest Mem. at 14.

14

| Pay Period | Weeks in Pay Period | Hours Per Week | Daily Salary | Hourly Wage (includes $40 per week in addition to Plaintiff Argueta's daily wages)[3] | Lawful Overtime Wage | OT Hours Worked Per Week | Weekly Pay | Lawful weekly Pay | Underpayment per Week |
|---|---|---|---|---|---|---|---|---|---|
| 10/22/2015-12/31/2015 | 10 | 78 | $140.00 | $13.08 | $19.62 | 38 | $1,020.00 | $1,765.56 | $745.56 |
| 01/01/2016-12/31/2016 | 52 | 78 | $147.50 | $13.75 | $20.63 | 38 | $1,072.50 | $1,856.44 | $783.94 |
| 01/01/2017-12/31/2017 | 52 | 78 | $155.00 | $14.42 | $21.63 | 38 | $1,125.00 | $1,946.94 | $821.94 |
| 01/01/2018-12/31/2018 | 52 | 78 | $162.50 | $15.10 | $22.65 | 38 | $1,177.50 | $2,038.20 | $860.70 |
| 01/01/2019-12/31/2019 | 52 | 78 | $170.00 | $15.77 | $23.65 | 38 | $1,230.00 | $2,2128.70 | $898.70 |
| 01/01/2020-12/31/2020 | 51 | 78 | $170.00 | $15.77 | $23.65 | 38 | $1,230.00 | $2,2128.70 | $898.70 |
| 01/01/2021-01/10/2021 | 1 | 78 | $170.00 | $15.77 | $23.65 | 38 | $1,230.00 | $2,2128.70 | $898.70 |

[3] The hourly wage methodology consisted of dividing 40 by 7, for the additional compensation that Plaintiff Argueta received for extra hours that he worked over the course of seven days.  The Court added this amount, $5.71, to Plaintiff Argueta's daily salary, $140, in 2015, multiplied it by seven and divided the number by 78 for the hours that Plaintiff Argueta worked per week.  See Inquest Mem. at 3.

Plaintiff Argueta thus far is entitled to unpaid overtime wages as follows: $7,455.60 for weeks worked in 2015; $40,764.88 for weeks worked in 2016; $42,740.88 for weeks worked in 2017; $44,756.40 for weeks worked in 2018; $46,732.40 for weeks worked in 2019; $45,833.70 for weeks worked in 2020; and $898.70 for weeks worked in 2021.  Thus, Plaintiff Argueta is entitled to $229,182.56 for unpaid overtime wages.

Plaintiff Lucero's damages for unpaid overtime are $52,776.00.  Plaintiff Colin's unpaid overtime wages are $128,798.10.  Plaintiff Argueta's damages for unpaid overtime are $229,182.56.  The total amount in damages for unpaid overtime wages is $410,756.66.  These amounts differ significantly from Plaintiffs' counsel's damages calculations for each Plaintiff's unpaid overtime wages, which listed Plaintiff Lucero's unpaid overtime damages as $17,592.00, Plaintiff Colin's unpaid overtime damages as $42,929.76 and Plaintiff Argueta's unpaid overtime wages as $76,394.62.  See Sackowitz Decl. Ex. A at 3-4.

### 4.  Spread-of-Hours Claims

In addition to any claim for minimum wage or overtime, where an employee's workday exceeds 10 hours, the employee is entitled to receive one additional hour's pay at the basic minimum hourly rate.  12 N.Y.C.R.R. § 142-2.4(a).  Under the NYLL, employers must compensate employees who work a spread of hours "in excess of ten an additional hour at the minimum wage rate."  Pineda v. Tokana Cafe Bar Restorant Inc., No. 16-CV-1155 (JPO), 2017 WL 1194242, at *3 (S.D.N.Y. Mar. 30, 2017); 12 N.Y.C.R.R. § 146-1.5.  An employee's spread of hours is "the length of the interval

between the beginning and end of an employee's workday[,] . . . [which] includes working time plus time off for meals plus intervals off duty. 12 N.Y.C.R.R. § 146-1.6.

Spread of hours is determined by "multiplying the minimum wage by the number of days an employee worked more than ten hours." Angamarca, 2012 WL 3578781, at *7.

Plaintiff Argueta asserts that he "frequently worked shifts that spanned more than ten hours and that Defendants failed to compensate him spread of hours pay for shifts that spanned in excess of 10 hours per day. Compl. ¶ 52. Plaintiff Argueta states that Defendants failed to compensate him spread of hours pay for shifts that spanned in excess of 10 hours per day. Id. He stated that Defendants owe spread-of-hours pay for four days each week from January 1, 2019 until the end of his employment. Compl. ¶ 44.

Upon review of Plaintiff Argueta's Damages Calculations, Plaintiff's counsel incorrectly applied the minimum hourly wage rate as $15.00 from January 2019 to December 30, 2019. Inquest Mem. at 15.

According to Public Records, Shaker Contractors had five employees as recently as 2022. The minimum hourly rate for small employers with 10 or fewer non-fast food employees in New York City was $13.50 on and after December 31, 2018 and $15.00 on and after December 31, 2019. 12 N.Y.C.R.R. § 146-1.2.

As such, Plaintiff Argueta's correct "spread-of-hours" pay can be calculated as demonstrated below:

17

| Plaintiff Argueta | Pay Period | Number of weeks | SOH Days per Week | Minimum Wage | SOH per pay period |
|---|---|---|---|---|---|
| | 01/01/2019-12/31/2019 | 52 | 4 | 13.50 | $2,808.00 |
| | 01/01/2020-12/31/2020 | 52 | 4 | 15.00 | $3,120.00 |
| | 01/01/2021-01/10/2021 | 1 | 4 | 15.00 | $60.00 |
| | | | | **Total**: $5,988.00 | |

Plaintiff Argueta is entitled to $5,988.00 for "spread-of-hours" pay.

5. <u>Recordkeeping and Wage-Statement Claims</u>

The NYLL requires employers to provide employees with a wage notice and wage statements containing the regular hourly rate and overtime rate of pay, designated pay day, and frequency of pay at the time of hiring.  <u>N.Y. Lab. Law § 195(1)(a)</u>. Employers must also provide a statement listing the time period covered by each wage statement and the number of regular and overtime hours worked.  <u>N.Y. Lab. Law § 195(3)</u>.  Plaintiffs allege that at the time they were hired and throughout the duration of their employment, Defendants never furnished any wage statement or notice containing "their designated payday, . . . regular and overtime rates of pay, the number of regular and overtime hours worked, gross wages, deductions and other information as required under the NYLL §§ 195(1), 195(3).  Compl. ¶¶ 53-55; <u>N.Y. Lab. Law §§ 195(1), 195(3)</u>.  Where an employer fails to provide an employee with a wage notice listing the information required under the NYLL § 195(1), within ten business days of their first day of employment, an employee is entitled to recover "fifty dollars for each work day that the violations occurred or continue to occur, but

not to exceed a total of five thousand dollars." N.Y. Lab. Law § 198(1-b).  Similarly, an employee is entitled to receive "two hundred fifty dollars for each work day" that an employer violates N.Y. Lab. Law § 195(3), with such damages limited to five thousand dollars.  N.Y. Lab. Law § 198(1-d).

Each Plaintiff worked over 100 days for Defendants and their allegations of the ongoing wage notice and statement violations, which this Court accepts as true given Defendants' default, entitles Plaintiffs to recover the maximum amount of statutory damages.  As such, each Plaintiff is entitled to recover the statutory cap of $5,000 under the NYLL § 198(1-b) and the maximum $5,000 under the NYLL § 198(1-d). Each Plaintiff shall be awarded an amount of $10,000 in damages for violations of the NYLL's wage notice and wage statement requirements.  In total, Plaintiffs are entitled to $30,000 in damages for violation of NYLL's wage notice and wage statement requirements.

6.  Timely Payment of Wages

Defendants failed to pay Plaintiffs as often and as early as required by the NYLL. See N.Y. Lab. Law § 191(1)(a).  Employers are required to pay "weekly and not later than seven calendar days after the end of the week in which the wages are earned." N.Y. Lab. Law § 191(1)(a).  Plaintiffs "fit squarely" within the meaning of manual workers under the NYLL.  N.Y. Lab. Law § 190(4); see Cuzco v. Orion Builders, Inc., No. 06-CV-2789 (KMW) (THK), 2010 WL 2143662 (S.D.N.Y. May 26, 2010); see (defining the term manual worker as a "mechanic, workingman or laborer").

Under both the NYLL and FLSA, the remedy for untimely wages is limited to liquidated damages.  Humphrey v. RAV Investigative & Sec. Servs. Ltd., No. 12-CV-3581 (NRB), 2016 WL 7190073 at *6 (S.D.N.Y. Nov. 29, 2016); N.Y. Lab. Law § 198(3). In violation of NYLL § 191(1-a), Defendants are subject to liquidated damages "equal to one hundred percent of the total amount of the wages found to be due," as discussed more fully below.  N.Y. Lab. Law § 198(1-a).

      7.  <u>Bounced Checks</u>

In addition, Defendants paid Plaintiffs by means of checks which often did not clear and therefore failed to pay Plaintiffs weekly wages on "numerous occasions" in a timely manner.  Proposed Findings ¶¶ 11,16, 21.  Based on the bounced checks, Plaintiffs request $4,000 for Plaintiff Lucero, $5,900 for Plaintiff Colin, and $4,300 for Plaintiff Argueta.  See id.  "An employer's paychecks bouncing may establish liability for FLSA and NYLL minimum wage violations if the employee is underpaid as a result."  Humphrey v. Rav Investigative & Sec. Servs. Ltd., 169 F. Supp. 3d 489, 498 (S.D.N.Y. 2016).  While Plaintiffs have indicated the amounts for the Defendants' checks that bounced and incorporated the amounts into each Plaintiff's damages calculations, they have not demonstrated any underpayment as a result.  See Campos v. BKUK 3 Corp., No. 18-CV-4036 (JGK) (KHP), 2021 WL 3540243, at *10 (S.D.N.Y. Aug. 10, 2021), report and recommendation adopted, No. 18-CV-4036 (JGK), 2021 WL 3863198 (S.D.N.Y. Aug. 30, 2021), and report and recommendation adopted sub nom. Macancela v. Kukaj, No. 18-CV-7507 (JGK), 2021 WL 3863266 (S.D.N.Y. Aug. 30, 2021) (recommending that plaintiffs not be awarded damages for bounced checks

20

for failure to demonstrate damages for such checks whereas plaintiffs that submitted documentation or information about when they incurred bank fees were entitled to compensation).   Accordingly, Plaintiffs' claims are insufficient to establish both unpaid wages and for untimely payments made to plaintiffs as a result of bounced checks.  See Sackowitz Decl. Ex. A at 2-4.

### 8.  Liquidated Damages

Plaintiff seeks duplicative liquidated damages under the FLSA and NYLL, however, in the Second Circuit, "[t]here is no appellate authority as to whether a plaintiff may" be entitled to cumulative or 'simultaneous' or 'stacked' liquidated damages under the FLSA and the NYLL, and district courts in the Second Circuit "are deeply divided." Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015).   Some courts view the FLSA liquidated damages as a compensation, whereas under NYLL they serve as a penalty to justify double recovery due to the statutes' "fundamentally different purposes."  Id.

Other courts deem cumulative damages as inappropriate given the purpose of the FLSA and the NYLL liquidated damages to deter wage-and-hour violations.  Id. at 506.  In the Second Circuit, plaintiffs are not entitled to receive double recovery for damages under both federal and state wage law.  Gamero, 272 F. Supp. 3d at 498.  In Rana v. Islam, the Second Circuit held that the plaintiff was not entitled to duplicative recovery and vacated the liquidated damages award under the FLSA. Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018); id.; see also Tapia, 906 F.3d at 60–61 (favoring liquidated damages under the NYLL over the FLSA and holding that the

district court properly declined duplicative recovery under both statutes for employees).  The Second Circuit adopted the interpretation that declined cumulative or "stacked" liquidated damages for the "same course of conduct."  Hernandez v. Schloss, No. 12-CV-04339 (ALC), 2020 WL 1228644, at *3 (S.D.N.Y. Mar. 13, 2020); see also Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 83 (2d Cir. 2018). Given that the NYLL and FLSA liquidated damages are "materially identical," the Second Circuit awards only one liquidated damages award for the same injury.  Id.

The Southern District of New York in Inclan v. New York Hosp. Grp., Inc. reasoned that that the distinction between the FLSA and the NYLL was unpersuasive following 2009 because liquidated damages no longer turned on the willfulness of the violations.  Inclan, 95 F. Supp. 3d at 506.  Because the state and federal statutes no longer compensate plaintiffs for disparate harms, liquidated damages are "essentially identical remedies."  Id.  The Court thus declined to award the plaintiffs cumulative damages under the FLSA and the NYLL.  Id.

Plaintiffs seek liquidated damages, which "are presumed unless defendants can show subjective good faith."  Campos, 2021 WL 3540243 at *8.  As a result of Defendants' default and failure to rebut the liquidated damages presumption and in the absence of conduct of good faith, the Court presumes Defendants acted willfully and in bad faith.  See Inquest Mem. at 6.  Plaintiffs in turn are entitled to liquidated damages under the NYLL.

Under the NYLL, a plaintiff is entitled to recover the "full amount of underpayment, all reasonable attorney's fees, [and] prejudgment interest as required

under the civil practice law and rules[.]"  N.Y. Lab. Law § 198.  Employees are entitled to receive "liquidated damages equal to one hundred percent of the total amount of the wages found to be due."  Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 60 (2d Cir. 2016); N.Y. Lab. Law § 198(1-a).  This amount is equivalent to the "amount owed to the Plaintiffs in unpaid wages, which includes unpaid minimum wage, unpaid overtime, and unpaid spread-of-hours."  Villanueva v. 179 Third Ave. Rest. Inc., 500 F. Supp. 3d 219, 239 (S.D.N.Y. 2020), report and recommendation adopted sub nom. Villanueva v. 179 Third Ave. Rest. Inc., No. 16-CV-8782 (AJN) (RWL), 2021 WL 2139441 (S.D.N.Y. May 26, 2021).  Plaintiffs' liquidated damages amount to the sum of their unpaid overtime wages and spread of hours pay.

For Plaintiff Lucero, liquidated damages are $52,776.00.  For Plaintiff Colin, liquidated damages are $128,798.10.  For Plaintiff Argueta, liquidated damages are $235,170.56.  In total, liquidated damages amount to $416,744.66.

### 9.  Pre-judgment Interest for Unpaid Wages

Plaintiffs seek pre-judgment interest on claims for unpaid regular, overtime, and spread of hour wages under the NYLL.  Proposed Findings ¶ 91.  Under the NYLL, plaintiffs could recover both liquidated damages and pre-judgment interests.  Chuk On Chan v. Good Chows Inc., No. 16-CV-02794 (RJS) (SN), 2017 WL 9538901, at *6 (S.D.N.Y. Mar. 3, 2017), report and recommendation adopted, No. 16-CV-2794 (RJS) (SN), 2017 WL 6550689 (S.D.N.Y. Dec. 21, 2017).  As the Court recommends liquid damages compensation only in accordance with the NYLL, plaintiffs are "eligible for an award of prejudgment interest on the full ... damages arising out of his wage

23

claims." Elisama v. Ghzali Gourmet Deli Inc., No. 14-CV-8333 (PGG) (DF), 2016 WL 11523365, at *14 (S.D.N.Y. Nov. 7, 2016), report and recommendation adopted, No. 14-CV-8333 (PGG) (DF), 2018 WL 4908106 (S.D.N.Y. Oct. 10, 2018).

The statutory pre-judgment interest rate according to the New York Civil Practice Law and Rules is set at nine percent per year. N.Y. C.P.L.R. §5004(a).

Where damages were "incurred at various times," interest shall be calculated based on "each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp., No. 13-CV-3061 (JGK), 2014 WL 2624759, at *5 (S.D.N.Y. June 10, 2014; N.Y. C.P.L.R. §5001(b). Courts have discretion to rely on a reasonable date to determine when pre-judgment interest should accrue. Villanueva, 500 F. Supp. 3d at 243. Where multiple periods of employment are involved, courts default to the midpoint of the plaintiff's employment within the limitations period. Id. Pre-judgment interest should be awarded based on plaintiffs' unpaid wages and unpaid spread of hours pay, exclusive of the plaintiffs' liquidated damages award. The Court finds the nine per cent annum interest rate is warranted.

Each Plaintiff's employment must be looked at separately to calculate their pre-judgment interest. Plaintiffs have submitted damages calculations with approximate midpoints as follows: August 12, 2017 for Plaintiff Lucero; April 27, 2018 for Plaintiff Colin, and June 1, 2018 for Plaintiff Argueta. Sackowitz Decl. Ex. A at 3-4.

Multiplying the principal of each Plaintiff by an interest rate of 9% and by the time period from each Plaintiffs' respective midpoint date until the date of judgment

24

to determine the time span in years, each Plaintiff is entitled to pre-judgment interest which will be calculated by the Clerk of Court.

      10. <u>Attorney's Fees and Costs</u>

Courts in the Second Circuit have adopted a "presumptively reasonable fee" standard, which considers all relevant case-specific factors to set a reasonable hourly rate. <u>Simmons v. New York City Transit Auth.</u>, 575 F.3d 170, 174 (2d Cir. 2009). The reasonable hourly rate, is "what a reasonable paying client would be willing to pay." <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections</u>, 522 F.3d 182, 190 (2d Cir. 2008). To calculate the "lodestar," courts look to what a reasonable client would be willing to pay," given that the same client also "wishes to spend the minimum necessary to litigate the case effectively." <u>Id</u>. at 184, 190. In determining a reasonable hourly rate, courts conduct a case-specific inquiry that considers factors including but not limited to: (1) the complexity and difficulty of the matter; (2) the expertise of counsel; (3) resources necessary to effectively prosecute the case; (4) the timing demands of the case; (5) whether an attorney may have expressed interest in representing the case or would have offered services pro-bono; (6) the client's negotiating power; and (7) the attorney's interest in the case given their potential reputational gain. <u>Id</u>. at 190. In addition, courts in this Circuit account for market rates in the community for "similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Konits v. Karahalis</u>, 409 F. App'x 418, 422 (2d Cir. 2011). To determine the reasonable hourly rate for the

attorney's work, these case-specific considerations should then be multiplied by "a reasonable number of hours expended to reach the presumptively reasonable fee." Id.

Four timekeepers were identified in this matter: Kenneth Katz, Adam Sackowitz, Eliseo Cabrera, and Nicola Ciliotta.  Inquest Mem. at 16.  Mr. Katz lists an hourly rate of $500.00 per hour (who has practiced employment law for approximately 17 years.) Id.

Mr. Sackowitz's hourly rate is listed as $375.00.  Mr. Sackowitz has practiced employment law for "nearly 7 years." Id.

Mr. Cabrera is an associate at the firm and has "focused his practice on employment law" for approximately 3 years.  Id.  Mr. Cabrera's hourly rate is listed as $325.00.  Id.

Mr. Ciliotta was an associate at the firm and practiced employment law for 3 years.  Id.  Mr. Ciliotta's hourly rate was $325.00.  Id.

Plaintiffs have submitted a copy of Plaintiffs' counsel's time records setting forth the hours worked on this matter.  Sackowitz Decl. Ex. B at 2-3.

Courts in the Southern District of New York have determined a fee in the range from $250 to $450 as appropriate for experienced employment law litigators.  Chuk On Chan, 2017 WL 9538901 at *7.  Moreover, a reasonable rate for senior employment attorneys dealing with wage-and-hour cases typically ranges from $300-$400 per hour, with $300 awarded for senior associates with eight or more years of experience.  See Martinez v. Paramount Country Club, LLC, No. 18-CV-04668 (VB) (JCM), 2019 WL 2450856, at *4 (S.D.N.Y. Apr. 1, 2019), report and recommendation

26

adopted, No. 18-CV-4668 (VB), 2019 WL 2171109 (S.D.N.Y. May 20, 2019); see also YUAJIAN LIN, et al., Plaintiffs, v. LA VIE EN SCHEZUAN RESTAURANT CORP., et al. Defendants. Additional Party Names: Savour Sichuan Inc., Yi Zhang, Yu Huang, Zhong Qing Wang, No. 15-CV-09507 (DF), 2020 WL 1819941, at *3 (S.D.N.Y. Apr. 9, 2020).  Both the Southern District of New York and the Eastern District of New York have reduced the rates of experienced employment lawyers engaged in FLSA and NYLL litigation to the low end of the identified range, $300.00, in cases where the lawyer's trial performance lacked "skill and/or professionalism."  Id.

In assessing the reasonableness of attorneys' fees, the Court evaluates the quality of the attorney's work.  Schalaudek v. Chateau 20th St. LLC, No. 16-CV-11 (WHP) (JLC), 2017 WL 729544, at *12 (S.D.N.Y. Feb. 24, 2017), report and recommendation adopted as modified, No. 16-CV-11, 2017 WL 1288859 (S.D.N.Y. Apr. 6, 2017), order amended and superseded, No. 16-CV-11, 2017 WL 1968677 (S.D.N.Y. May 11, 2017), and report and recommendation adopted as modified, No. 16-CV-11, 2017 WL 1968677 (S.D.N.Y. May 11, 2017); Id.

The Court takes issue with the quality of Plaintiffs' representation given their incorrect damages calculations.  See Sackowitz Decl. Ex. A. at 3-4; see Harris v. Fairweather, No. 11-CV-2152 (PKC) (AJP), 2012 WL 3956801, at *8 (S.D.N.Y. Sept. 10, 2012), report and recommendation adopted, No. 11-CV-2152 (PKC) (AJP), 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012) (holding that the poor quality of counsel's work in association with the inquest, which included numerous errors, warranted a reduction in attorneys' fees); see also Gesualdi v. Cirillo, No. 09-CV-4570 (KAM)

(JMA), 2011 WL 666196, at *5 (E.D.N.Y. Jan. 3, 2011), report and recommendation adopted, No. 09-CV-4570 (KAM) (JMA), 2011 WL 666197 (E.D.N.Y. Feb. 14, 2011) (recommending a reduction in the total number of hours billed and total compensation due to the "many calculation errors . . . and the considerable time this Court had to spend to rectify them").  Plaintiffs' counsel miscalculated each Plaintiff's damages awards, which included incorrect amounts for unpaid overtime wages, liquidated damages, spread of hours pay for Plaintiff Argueta, and the addition of unpaid late wages into each Plaintiff's cumulative damages.  See Sackowitz Decl. Ex. A. at 3-4.  In addition, Plaintiffs' counsel computed the lawful overtime wage as half of each Plaintiff's hourly wage as opposed to multiplying the regular hourly wage by 1.5 to determine the overtime wage amount.  See id.

In addition to the court's "own knowledge of reasonable rates in the district," courts may also account for reasonable hourly rates approved in prior cases.  Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 323 (S.D.N.Y. 2014).  According to the Court's own research, this District had previously declined to award Mr. Katz a requested rate of $425, with 6 years of experience as a partner at Katz Melinger.  See Martinez, 2019 WL 2450856, at *4 (recommending a reduction in Mr. Katz's rate to $400, consistent with reasonable hourly rates generally approved in this District).  The Court finds a reduction appropriate given that the Defendants' default and the absence of a "novel or complex legal or factual" question.  Burns v. Scott, No. 20-CV-10518 (JGK), 2022 WL 10118491, at *14 (S.D.N.Y. Oct. 17, 2022), reconsideration denied, No. 20-CV-10518 (JGK), 2022 WL 18858909 (S.D.N.Y.

Nov. 9, 2022); see also Xochimitl, 2016 WL 4704917 at *20 (finding it appropriate to award attorney's fees at lower rates in cases that were "relatively simple" due to the Defendants' default); see also Galeana, 120 F. Supp. 3d at 324 (reducing the hourly rate of a managing member of a law firm from $450 to $425 to reflect the "straightforward procedure" of the case and the lack of "novel or complex issues arising from the claims").

In addition, courts in this District have found it appropriate to reduce Mr. Sackowitz's rate from $300 to $250, given his five years of experience at the time. See Martinez, 2019 WL 2450856, at *4.

Moreover, the four timekeepers have not demonstrated a significant distinction between their prior cases and the one at hand that would call for the rates requested. See Smith v. Digital Soc. Retail, Inc., No. 18-CV-6602 (RA), 2019 WL 5450397, at *3 (S.D.N.Y. Oct. 24, 2019)

In light of this, the Court will reduce the billing rates to $450.00 for Mr. Katz; $350.00 for Mr. Sackowitz; and $300.00 for Mr. Cabrera and Mr. Ciliotta. Plaintiffs indicated 67.90 hours of work on this matter. Sackowitz Decl. Ex. B at 3. Given the simple nature of this matter and the resulting default, the Court finds these hours reasonable. The Court recommends that attorney fees be awarded with a reduction in billing rates.

Plaintiffs are entitled to recover costs incurred from the Defendants. N.Y. Lab. Law § 663(4). Plaintiffs seek $1,1338.20 in costs, covering fees related to filing,

process server, and translation.  The Court finds $1,338.20 a reasonable amount for costs expended in connection with this action.

In sum, the Court finds the reasonable amount of attorney's fees and costs is $22,913.20.

      11. Post-Judgment Interest

Finally, Plaintiffs seek post-judgment interest pursuant to the NYLL §198(4).  The NYLL requires that in any civil action, "[a]ny judgment or court order awarding remedies" that "remain[s] unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." N.Y. Lab. Law §198(4).  As this request is in accordance with NYLL provisions, Plaintiffs are entitled to post-judgment interest in an amount consistent with NYLL §198(4).  See Elisama, 2016 WL 11523365 at *19.

## RECOMMENDATION

For the reasons stated above, this Court recommends that Plaintiffs be awarded damages as follows: (1) damages for unpaid overtime wages under the NYLL in the amount of $410,756.66; (2) damages for unpaid spread-of-hours-pay under the NYLL in the amount of $5,988.00; (3) damages for statutory violations of wage notice and wage statement provisions of the NYLL in the amount of $30,000; (4) liquidated damages in the amount of $416,744.66; (5) attorney's fees and costs in the amount of $22,913.20; and (6) pre- and post-judgment interest, which will be calculated by the Clerk of Court in the event this Report is adopted.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections shall be filed with the Clerk of Court and on ECF.  Any requests for an extension of time for filing objections must be directed to Judge Schofield.  **Failure to file objections within fourteen days will result in a waiver of objections and will preclude appellate review.**  See Thomas v. Arn, 474 U.S. 140 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

SO ORDERED.

DATED:     New York, New York
           April 21, 2023

_Jennifer E. Willis_
JENNIFER E. WILLIS
United States Magistrate Judge

31